1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  KATHLEEN ELLIS,

12               Plaintiff,

13      v.                              NO. CIV. S-05-559 LKK/GGH

14  HOLLISTER, INC., et al.,

15               Defendants.
    _____/
16  BRENDA DIMARO; and HALLIE LAVICK,

17               Plaintiffs,

18      v.                              NO. CIV. S-05-1726 LKK/GGH

19  HOLLISTER, INC., et al.,
                                             O R D E R
20               Defendants.
    _____/
21

22       Plaintiffs Kathleen Ellis, Brenda Dimaro, and Hallie Lavick

23  ("plaintiffs") bring this action against defendants Hollister,

24  Inc., Hollister Employee Share Ownership Trust, John Dickinson

25  Schneider, Inc. ("JDS"), Samuel Brilliant, James A. Karlovsky,

26  James McCormack, and Richard Zwirner alleging violations of the

                                   1

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et. seq. Plaintiff Ellis additionally contends that defendants approved a series of Superior Court Domestic Relations Orders (DROs) issued pursuant to her divorce proceedings that she claims do not comply with ERISA and the terms of the Plan.[1]

Pending before the court are defendants' motions to dismiss.

**I.**

**PLAINTIFFS' ALLEGATIONS**[2]

These two cases concern Hollishare, the Hollister Employee Share Ownership Trust, an employee-profit sharing plan governed by ERISA.

Plaintiffs allege that JDS is the parent company of Hollister and a de facto fiduciary of the Plan by virtue of its ability to control management and disposition of trust fund assets, to artificially limit the value of JDS shares to "book value," to retain the right to buy all shares of JDS stock, and to limit the

////

////

---

[1] Although the court has not previously considered the instant cases, it has issued an order in a related case DeFazio v. Hollister, Inc., et al., No. Civ. S-04-1358, denying defendants' motion to transfer venue, but granting defendants' motions to dismiss causes of actions related to ERISA prohibited transactions and stock valuation because they were barred by the statute of limitations. The court, however, denied defendants' motions to dismiss DeFazio's QDRO claims.

[2] The summary of plaintiffs' allegation is derived from Dimaro's and Lavick's complaint and from Ellis' first amended complaint. Dimaro's and Lavick's complaint contain similar, if not identical, allegations to Ellis' first amended complaint. Ellis filed her complaint two months prior to Dimaro and Lavick.

pool of available buyers.[3]    Plaintiffs further allege that Brilliant, McCormack, Karlovsky, Zwirner, Winn, Stempinski, Matson and Herbert are current and former trustees of the Plan and named fiduciaries of Hollishare, and that plaintiffs are all participants of the Plan.  See 29 U.S.C. § 1002(7).

Plaintiffs allege that the individual defendants breached their fiduciary duties by assigning "book value" to Hollishare's assets without a diligent and prudent investigation and without an independent third-party appraisal.  Plaintiffs additionally allege that when they retired from Hollister, the trustees inappropriately determined the final value of their individual accounts in the Hollishare plan based on book value, a figure that did not accurately reflect the true market value of the shares.[4]

////

---

[3]  As the court explained in DeFazio, "book value" is defined as a method or formula used to determine the value of corporate stock.  As I noted in the previous order, it appears that "[t]he term 'book value' has no generally accepted meaning; its significance varies according to the particular definitions or stipulations under which it is to be determined."  51 A.L.R.2d 606 §2.  "'[T]he law does not define 'book value' as denoting a particular method of arriving at the value of fixed or other assets of a corporation.'"  Id. (quoting Lassallette v. Parisian Baking Co., 110 Cal.App.2d 375 (1952)).  "[G]enerically and irrespective of ultimate form, the term contemplates a theoretical value resulting from depreciation or appreciation as computed upon an originally determined base.  The formula whereby variation from the base figure is to be determined is supplied by some form of stipulation or acquiescence, either through express provisions of some kind, or through acceptance of particular accounting procedures previously applied."  Id.  See Order at 3.

[4]  Ellis' complaint alleges that she retired from Hollister on June 3, 2004.  It is unclear from Dimaro's and Lavick's complaint when they retired.

1 Defendants allegedly failed to undertake an independent evaluation
2 to determine the true value of the shares as required under the
3 Plan, and thus, the amounts paid to plaintiffs do not reflect
4 "adequate consideration" as defined under 29 U.S.C. § 1002(18).

5      Plaintiffs further maintain that defendants engaged in
6 prohibited transactions with JDS, a party in interest, to the
7 detriment of plan participants and beneficiaries.  Plaintiffs
8 allege that these transactions allowed "assets of the plan to
9 wrongfully inure to the benefit of JDS."  Defendants allegedly
10 purchased employer stock from plaintiffs and others for less than
11 adequate consideration and that they subsequently sold these stocks
12 to JDS at a price reflecting so-called book value, rather than a
13 "price not less favorable to the plan than the offering price for
14 the security as established by the current bid and asked prices
15 quoted by persons independent of the issuer and of any part in
16 interest." See 28 U.S.C. § 1002(18).  Plaintiffs explain that JDS'
17 Articles of Incorporation reinforce such transactions by granting
18 JDS a right of first refusal, a buy-back provision, and a
19 restriction on ownership of their common stock.  According to
20 plaintiffs, "defendants are using the plan as a personal holding
21 company, and as a billion dollar tax shelter."  Plaintiffs allege
22 that because defendants improperly valued the Plan's assets and
23 allowed the assets to revert back to the plan sponsor, plaintiffs'
24 retirement benefits were improperly valued.

25      In addition to these allegations, Ellis' complaint contains
26 claims specific to her lawsuit, which relate to various Domestic

4

Relations Orders entered by the state court upon her divorce.  She alleges that on January 16, 1998, the Superior Court of California entered no fewer than eight Domestic Relations Orders ("DROs")(seven support DROs and one community property DRO) which distributed to Jim DeFazio ("DeFazio"), her former husband, his alleged community property share of her vested benefits in Hollishare.  The Superior Court ordered that DeFazio, as an alternate payee of the Plan[5], should have his interest held in a "segregated account" and credited with a "proportionate share of earnings, interest, gains, losses allocated to . . . [Ellis'] account from each full plan year from January 1, 1998 to the date of segregation."  Ellis maintains that ERISA plans are required to comply with any valid "qualified" domestic relation order ("QDRO").[6]  Ellis contends, however, that, as plan administrator, defendants were responsible for determining whether the requirements for qualified status were satisfied.  Ellis asserts that trustees of the Plan acted on the Superior Court orders despite the fact that do not comply with the requirements of ERISA and the terms of the Plan.

---

[5]  As the court previously noted in the <u>DeFazio</u> order, the term "alternate payee" for ERISA purposes means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant."  29 U.S.C. § 1056(d)(3)(K).

[6]  A DRO is a QDRO if it creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or part of the benefits payable with respect to a participant under an ERISA plan.  Ellis Compl. at 11, citing 29 U.S.C. § 1056(d)(3)(B).

5

## II.

## ANALYSIS

Defendants contend that plaintiffs fail to state a claim under ERISA and urge the court to dismiss plaintiffs' lawsuits.  As a threshold matter, I note that defendants raise arguments which the court previously rejected in DeFazio.  I address those arguments before turning to new arguments raised by defendants.

**A.   VALUATION OF JDS SHARES AT BOOK VALUE AND PROHIBITED TRANSACTIONS**

ERISA is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983); Nachman Corp. v. PBGC, 446 U.S. 359, 375 (1980).  One of the primary purposes for the enactment of ERISA was to establish "standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans."

I turn first to plaintiffs' allegations that defendants breached their fiduciary duties by assigning "book value" to Hollishare's assets without a diligent and prudent investigation and without an independent third-party appraisal, and when they then entered into transactions with JDS.

Section 406 of ERISA, 29 U.S.C. § 1106, establishes a blanket prohibition against certain transactions, such as the sale of stock to an ERISA plan by a party in interest, because of the high potential for abuse.  ERISA does, however, provide an exemption from § 406 for these types of transactions if they meet certain

6

1   requirements.  See ERISA § 408(e), 29 U.S.C. § 1108(e).  Section

2   408(e) provides an exemption for the sale or acquisition by a plan

3   of employer stock if the sale price is for "adequate

4   consideration."  29 U.S.C. § 1108(e).  When the security is not

5   traded on a national securities exchange, the term "adequate

6   consideration" means "a price not less favorable to the plan than

7   the offering price for the security as established by the current

8   bid and asked prices quoted by persons independent of the issuer

9   and of any party in interest."  29 U.S.C. § 1002(18).  Plaintiffs

10  in the instant cases, like DeFazio, state a cognizable claim

11  because they allege that HolliShare sold stock to its parent

12  corporation, JDS, for less than adequate consideration.

13      As they did in DeFazio, defendants defend the challenged

14  transactions on the grounds that the valuation of stock based on

15  "book value" constitutes adequate consideration.[7]  They also assert

16  that plaintiffs' claims fail because "defendants have not engaged

17  in any prohibited transactions."  Defs.' Mot. to Dism. in Ellis at

18

19      [7]  Defendants submit various documents, including JDS'
    Articles of Incorporation and other documents that purportedly
20  support their assertion.  These arguments were rejected by this
    court in DeFazio.  The court thus has no qualms in using the same
21  language here to resolve the instant motion to dismiss.  In this
    round of briefing, however, defendants contend that they believe
22  that the court used the wrong definition of "adequate
    consideration."  They contend that the court inappropriately used
23  ERISA § 318(A)(29 U.S.C. § 1002(18)(A)) which they argue only
    applies in the case where there is generally a recognized market.
24  See Defs.' Mot. to Dism. in Dimaro at 22, n. 12.  Whatever the
    definition, whether defendants' utilization of book value
25  constitutes "adequate consideration" is a question requiring
    examination of evidence and the merits, thus precluding dismissal
26  at this stage.

1  29, Dimaro at 20-22.  Defendants' arguments are unavailing.  As the

2  court explained in DeFazio, to consider their arguments would

3  require the court to examine the merits of the case, which is not

4  appropriate on a motion to dismiss.[8]  Plaintiffs have stated a

5  valid claim under ERISA § 408(e), 29 U.S.C. 1108(e).

6  **B.  ELLIS' QDRO CLAIM**

7       ERISA provides for state court-ordered assignments of plan

8  benefits to former spouses and dependents.  29 U.S.C. § 1056(d)(3)

9  provides that pension plans "shall provide for the payment of

10 benefits in accordance with the applicable requirements of any

11 qualified domestic relations order ("QDRO")."  QDROs are a type of

12 Domestic Relations Order ("DRO") relating "to the provision of

13 child support, alimony, or marital property rights to a spouse,

14 former spouse, child, or other dependent of a plan participant

15 . . . made pursuant to a State domestic relations law."  29 U.S.C.

16 § 1056(d)(3)(ii).

17      A DRO is a QDRO if it "creates or recognizes the existence of

18 an alternate payee's right to, or assigns to an alternate payee the

19 right to, receive all or part of the benefits payable with respect

20 to a participant under a[n] [ERISA] plan," 29 U.S.C.

21 § 1056(d)(3)(B), and does not (1) require the plan to provide any

22 ─────────────────────

23      [8]  A fiduciary who claims that a transaction is exempted from
     the prohibitions of ERISA § 406 has the burden of proving that the
     stock was purchased for no more than adequate consideration.  Lowen
24   v. Tower Asset Management, Inc., 829 F.2d 1209, 1215, (2d Cir.
     1987); Donovan v. Cunningham, 716 F.2d 1455, 1467-68 (5th Cir.
25   1983).  For the exemption of ERISA § 408(e) to apply, fiduciaries
     must: (1) engage in a prudent investigation; and (2) pay no more
26   than fair market value for the securities purchased.

type of benefit not otherwise provided, (2) require the plan to provide increased benefits, or (3) require benefits to be paid to an alternate payee which must be paid to another alternate payee under another QDRO.  29 U.S.C. § 1056(d)(3)(D).  Finally, a QDRO must specify the name and mailing address of the alternate payee and the affected plan participant, the amount or percentage of the participant's benefits to be paid or the means by which that amount will be determined, the number of payments or time period to which the order applies, and the plan to which the order applies.  29 U.S.C. § 1056(d)(3)(c).  Ellis alleges that the series of DROs issued pursuant to her divorce proceedings do not comply with these requirements and are therefore not QDROs.

Ellis asserts that on January 16, 1998, the Superior Court of California entered no fewer than eight DROs which distributed to Jim DeFazio, her former husband, his alleged community property share of her vested benefits in Hollishare" Ellis maintains that ERISA plans are required to comply only with valid QDRO.[9]  Ellis contends that as plan administrator, defendants were responsible for determining whether the requirements for qualified status were satisfied, and that trustees of the Plan failed to do this, and that the DROs do not comply with the requirements of ERISA and the terms of the plan.

Defendants argue that Ellis' amended complaint fails to provide them with adequate notice of her claim and that the court

[9]   See supra note 5.

1   should therefore dismiss her QDRO claim.  I cannot agree.  Fed. R.

2   Civ. P. 8(a)(2) requires only notice pleading, "a short and plain

3   statement of the claim showing that the pleader is entitled to

4   relief."  The Rule's standard only requires that "the averments of

5   the complaint sufficiently establish a basis for judgment against

6   the defendant."  See Yamaguchi v. United States Depot of the Air

7   Force, 109 F.3d 1475, 1481 (9th Cir. 1997).  The court is required

8   to take all allegations of material fact in the complaint as true

9   and construe them in the light most favorable to Ellis.  Jensen v.

10  City of Oxnard, 145 F.3d 1078 (9th Cir. 1998).  Where, as here,

11  Ellis has alleged that defendants have failed to ensure that the

12  state court DROs were "qualified," she has provided "a short and

13  plain statement of her claim that would give defendant fair notice

14  of what her argument is and the legal grounds upon which it rests.

15  Coney v. Gibson, 355 U.S. 41, 47 (1957).  Defendants' motion to

16  dismiss Ellis' QDRO claim must be DENIED.

17  **C.  STANDING TO SUE UNDER ERISA**

18       Defendants argue that plaintiffs lack standing to sue under

19  ERISA.  Relying on Kuntz v. Reese, 785 F.2d 1410 (9th Cir. 1986),

20  defendants claim that plaintiffs lack standing because they have

21  retired and they requested and received a full distribution of

22  their vested benefits.  They argue that under the statute,

23  plaintiffs are not "participants" under ERISA and cannot bring

24  suit.[10]  Again, I cannot agree.

25  ────────────

26       [10]  Under ERISA, a civil action may be brought by either a
    participant, beneficiary, or fiduciary.  See ERISA § 502, 29 U.S.C.

The Supreme Court has explained that in the ERISA context "participant" means either "employees in, or reasonably expected to be in, currently covered employment," or "former employees who "have . . . a reasonable expectation of returning to covered employment" or who have "colorable claim[s] to vested benefits." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117-118 (1989)(citations omitted).  Plaintiffs contend that they are participants as defined by ERISA because they have "colorable claims" to vested benefits.  It is correct, as defendants maintain, that in Kuntz the Ninth Circuit held that plaintiffs there lacked standing where their benefits were distributed in a lump sum, and they were no longer plan participants.  The Circuit explained that the plaintiffs were not eligible to receive benefits because if successful, their claims would result in a "damage award," "not an increase of vested benefits."  785 F.2d at 1411.  The court stressed that the Kuntz plaintiffs - unlike the plaintiffs in the cases at bar – "do not allege that their vested benefits were improperly computed."  Id.[11]  The Circuit has distinguished Kuntz and allowed suit even when plaintiffs have received their vested benefits if they allege that fiduciaries "personally profited" from a beach of their duty of loyalty to the plan.  Amalgamated Clothing

---

§ 1132.  Plaintiffs allege in their complaint that they are "participants" under the plan.  Ellis Compl. at 4; Dimaro and Lavick Compls. at 3.

   [11]  The court reiterated that plaintiffs "already received their vested benefits," "accepted the payment of everything due to them in a lump sum," and "received the full extent of their benefits."  Kuntz, 785 F.2d at 1411-12.

1   v. Murdock, 861 F.2d 1406, 1418 (9th Cir. 1988).[12]  The court

2   emphasized that the "critical difference" between Kuntz and the

3   case in Amalgamated Clothing was that although the Kuntz plaintiffs

4   alleged that plan fiduciaries had "lied about the amount of

5   benefits that plaintiffs would get under the plan and failed to

6   comply with ERISA," "the Kuntz plaintiffs did not allege that the

7   fiduciaries personally profited from a breach of their duty of

8   loyalty to the plan." Id. at 1418 (emphasis in original).  Despite

9   the previous distribution of plan assets, the court concluded that

10  plaintiffs had standing to sue under such facts.  Id. 1418-19.

11      Defendants in the case at bar adamantly urge this court to

12  follow Kuntz because they argue, inter alia, that Amalgamated

13  Clothing is no longer good law.  I cannot agree.  The Ninth Circuit

14  has continued to reject the Kuntz doctrine where plaintiffs, former

15  employees who have received lump sum payments for their benefits,

16  allege that defendants have profited and that payment of plan

17  benefits was part of the fiduciaries' scheme to misuse plan assets.

18  See Waller v. Blue Cross of California, 32 F.3d 1337, 1339 (9th

19  Cir. 2004)(holding that even after defendants had terminated its

20  retirement plan, plaintiffs had standing to bring suit under ERISA

21  to pursue "equitable remed[ies] of a constructive trust to

22  _____

23      [12]  In Amalgamated Clothing, plaintiffs alleged that plan
    fiduciaries breached their duty of loyalty to the plan by using

24  plan assets to further the interests of David H. Murdock, another
    plan fiduciary, rather than to further solely the interests of the

25  plan participants and beneficiaries as required by ERISA.  Id. at
    1408. The Ninth Circuit explained that were it to find for

26  defendants and conclude that plaintiffs did not have standing to
    sue they would allow fiduciaries to "misuse ERISA plan assets."

1  distribute defendants' allegedly ill-gotten profits to the former

2  participants and beneficiaries of the Plan").  In the cases at bar,

3  plaintiffs allege that defendants were fiduciaries by virtue of

4  their roles as trustees and administrators of the Hollishare Plan.

5  Ellis Compl. at 3; Dimaro Compl. at 3.  Plaintiffs also allege that

6  defendants sought to profit by breaching their fiduciary duties by

7  valuing JDS stock which "did not accurately reflect the true market

8  value of the shares."  Ellis Compl. at 6; Dimaro Compl. at 4.

9  Plaintiffs further allege that by doing so and by granting JDS the

10 right of first refusal and restricting ownership on common stock,

11 defendants are "using the Plan for their benefit" - instead of the

12 exclusive benefit of participants and beneficiaries.  Ellis Compl.

13 at 7; Dimaro Compl. at 4.  According to plaintiffs, these actions

14 allow defendants to "use the Plan as a personal holding company,

15 and as a billion dollar tax shelter."  Id.  Finally, plaintiffs

16 pray for the equitable remedy of disgorgement of defendants' ill-

17 gotten profits.  Ellis Compl. at 14; Dimaro Compl. at 7.

18      Plaintiffs' allegations place their cases directly within the

19 purview of Amalgamated Clothing and Waller.  I conclude that

20 plaintiffs have standing as "participants" to proceed with their

21 lawsuits.

22 **D.   THE SETTLOR DOCTRINE**

23      Defendants maintain that plaintiffs challenge the "design" of

24 Hollishare, and that as a matter of law, plaintiffs' claims cannot

25 ////

26 ////

1    lie under the "Settlor Doctrine."[13]  Defendants argue that they are

2    charged with "nothing other than having administered the Plan in

3    compliance with its express terms."  As defendants put it,

4    plaintiffs' claims attack "only the fundamental design of the Plan,

5    specifically the method by which the Plan provides the JDS shares

6    held by it are to be valued."  As I explain below, defendants'

7    argument are unavailing on several bases.

8        ERISA provides that a "'person is a fiduciary with respect to

9    a plan,' and therefore subject to ERISA fiduciary duties, 'to the

10   extent' that he or she 'exercises any discretionary authority or

11   discretionary control respecting management' of the plan, or 'has

12   any discretionary authority or discretionary responsibility in the

13   _____

14        [13]   Section 7.03 of the Plan, provides:

15        7.03 The assets in the Trust Fund shall be valued by the
          Trustees at their respective fair market values as of
16        each December 31st.  The fair market value of Common
          Shares of JDS Inc. held in the Trust Fund shall, subject
17        to the provisions of the remainder of this Section 7.03,
          be their book value as of the valuation date as
18        reflected on the books of JDS Inc.  The Trustees shall
          accept such book value as the fair market value if such
19        book value is computed in accordance with generally
          accepted accounting principles.  If such book value was
20        not computed in accordance with generally accepted
          accounting principles, the Trustees shall investigate
21        the actual method of computation.  If after
          investigation they determine that such book value fairly
22        reflects the value of the shares under the
          circumstances, they shall make such adjustment thereto,
23        taking into consideration generally accepted accounting
          principles, as they deem reasonable and appropriate to
24        fairly reflect the value of the shares under the
          circumstances, provided however, that such adjustment
25        shall not exceed the difference between such book value
          and book value computed in accordance with generally
26        accepted accounting principles.

                                   14

1  administration' of the plan." Varity Corp. v. Howe, 516 U.S. 489,

2  498 (1996)(quoting ERISA § 3(21)(A), 29 U.S.C. § 1102(21)(A)).

3      On occasion, courts have suggested that defendants cannot be

4  held liable for breach of fiduciary duty under ERISA for design

5  decisions when the fiduciary is acting in his or her "settlor

6  capacity." See Hughes Aircraft Co. v. Jacobsen, 525 U.S. 432, 444

7  (1999); see also Lockheed Corp. v. Spink, 517 U.S. 882, 890-91

8  (1996)(holding that the act of amending a plan to establish early

9  retirement programs did not trigger ERISA's fiduciary duties); Bins

10 v. Exxon Co., 220 F.3d 1042, 1047 (9th Cir. 2000)("[A]n employer

11 does not act in its fiduciary capacity as a plan administrator when

12 it makes a business decision to amend a plan.").

13     Defendants direct the court to Wright v Oregon Metallurgical

14 Corp., 360 F.3d 1090 (9th Cir. 2004), where the issue before the

15 court was whether an ERISA violation occurred when the fiduciaries

16 and plan administrators failed to amend the stock bonus plan to

17 allow participants to sell a higher percentage of employer

18 securities than permitted by the express terms of the plan.  The

19 Ninth Circuit held that a fiduciary who invests in employer stock,

20 under those circumstances, "is presumed to have acted consistently

21 with ERISA." Id. at 1097.  To rebut that presumption, the

22 plaintiff must show that the fiduciary could not have "believed

23 reasonably that continued adherence to the plan's terms was in

24 keeping with the settlor's expectations of how a prudent trustee

25 would operate." Id.  Defendants contend that because the

26 Hollishare Plan directs the Trustees to invest the Plan's assets

15

1 in JDS shares, and because the Plan also specifies how those shares

2 are to be valued, defendants are insulated from liability for

3 following the plan.  Their argument is not dispositive.

4     First, as plaintiffs note, the court in <u>Wright</u> did not hold

5 that by following the plan's terms, those with fiduciary duties

6 would not be liable under ERISA.  Indeed, <u>Wright</u>'s explanation

7 directly contradicts defendants' contention.  The <u>Wright</u> court

8 explained that "ERISA requires that fiduciaries discharge their

9 duties in accordance with the terms of the plan, except when such

10 terms conflict with Titles I or IV of ERISA."  <u>Id.</u> at 1094.  Where,

11 as here, plaintiffs contend that the terms of the plan are unlawful

12 and inconsistent with ERISA, the Settlor Doctrine does not dispose

13 of plaintiffs' claims.  In sum, even if the plan's terms dictated

14 how the JDS shares were to be valued ("book value" rather than fair

15 market value), plaintiffs maintain that those terms are unlawful.

16 That contention, resting in part in a factual determination of fair

17 market value, cannot be resolved on a motion to dismiss.

18     Moreover, plaintiffs allege that defendants sold assets to JDS

19 for less than adequate consideration in violation of 29 U.S.C.

20 §§ 1106, 1108(e), allowed assets of the Plan to inure to the

21 benefit of JDS in violation of 29 U.S.C. § 1103, and administered

22 improper QDROS in violation of ERISA.  Because all such conduct

23 would violate ERISA, the Settlor Doctrine is irrelevant.

24     Secondly, the court cannot dispose of plaintiffs' ERISA claims

25 under the Settlor Doctrine because defendants are charged with more

26 than "having administered the Plan in compliance with its express

terms." Plaintiffs' claims attack more than the fundamental design of the Plan, they attack defendants' administration of the Plan. Although plaintiffs challenge the method under which the Plan provides the JDS shares are to be valued, they also allege that defendants failed to investigate whether book value reflects the true value of the shares. See Ellis Compl. at 6. They also allege that defendants resold plaintiffs' shares to JDS at a price not reflecting fair market value, at their expense and for JDS' benefit. Id. at 7. Finally, Ellis charges defendants with failing to correctly "qualify" the state court domestic relations orders. All these accusations pertain to the administration of the Plan rather than its design.

For the forgoing reasons, defendants' reliance on the Settlor Doctrine is unavailing.

**E.   JDS AS A DE FACTO FIDUCIARY**

Defendants urge the court to dismiss JDS from the suit because they claim JDS is not a fiduciary pursuant to the plan terms and under ERISA.  Plaintiffs' disagree.  I examine the parties' contentions.

Plaintiffs allege that:

JDS is a parent company of Hollister and a de facto fiduciary of the Plan by their ability to control both management and disposition of trust fund assets, to artificially limit the value of JDS shares to book value (even if the fair market value substantially exceeds that amount), to retain the right to buy all shares of JDS stock at book value, and to limit the pool of available buyers.

Ellis Compl. at 7.  Dimaro Compl. at 3.

17

1  Elsewhere, plaintiffs allege that the Articles of Incorporation:

2      grant JDS a right of first refusal, a buy-back
       provision, and a restriction, and a restriction on
3      ownership of their common stock.

4  <u>Id</u>.

5      According to plaintiffs, the Hollishare Trust agreement

6  "artificially defines the market value of the common shares of

7  Hollister," and because "JDS retains the right to buy all shares

8  of JDS stock" at this artificial value, defendants are ultimately

9  able to "use the plan as a personal holding company, and as a

10  billion dollar shelter." <u>Id</u>.  Defendants nevertheless argue that

11  JDS lacks the discretionary power or authority to cause Hollishare

12  to sell its JDS shares, and that JDS "has no control whatsoever

13  over Hollishare's transaction." Ellis Compl. at 3, 9, 10.

14  Defendants point out that the Articles of Incorporation establish

15  the transfer restrictions that limit ownership of JDS shares, and

16  that JDS' repurchase right is triggered only if and when a holder

17  of JDS common shares "desires or intends to transfer" those shares.

18  According to defendants, plaintiffs fail to allege that JDS has

19  instructed Hollishare Trustees whether or when they should

20  effectuate transactions in JDS common shares . . . . Under

21  ERISA, "[A] person is a fiduciary with respect to a plan to the

22  extent (i) he exercises any discretionary authority or

23  discretionary control respecting management of such plan or

24  exercises any authority or control respecting management or

25  disposition of its assets . . . or (iii) he has any

26  discretionary responsibility in the administration of such plan."

1   29 U.S.C. § 1002(21)(A).  ERISA's definition of "fiduciary" is

2   functional rather than formal.  <u>See</u> <u>Mertens v. Hewitt Assocs.</u>, 508

3   U.S. 248 (1993); <u>Kayes v. Pacific Lumber Co.</u>, 51 F.3d 1449, 1459

4   (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 914 (1995).  Thus, if JDS

5   in fact exercised any discretionary authority over plan assets, it

6   is an ERISA fiduciary, whether the Plan itself named it as such.

7   <u>See</u> <u>Yeseta v. Baima</u>, 837 F.2d 380, 386 (9th Cir. 1988)(holding that

8   a person who withdraws money from a pension plan and places it into

9   the company's account in order to pay operating expenses is a

10  fiduciary).  Put differently, a "de facto" fiduciary may be liable

11  even if it lacks formal power to control or manage a plan, but

12  nonetheless informally exercises the requisite "discretionary

13  control" over plan management and administration.

14      Plaintiffs have alleged facts which suggest that JDS may be

15  considered a de facto fiduciary.  The parties do not dispute that

16  JDS' Articles of Incorporation contain a share transfer restriction

17  that limits ownership of shares to JDS, and that JDS had the

18  absolute right to buy any and all JDS shares that are offered for

19  sale by anyone.  Plaintiffs allege that the arrangement is to their

20  determent and JDS' benefit.

21      The allegations appear to support plaintiffs' contention that

22  JDS controls the market for Hollishare and the price of the shares.

23  Given the "scheme" alleged by plaintiffs between the defendants,

24  the court cannot credit defendants' argument that JDS is not a

25  fiduciary because its "repurchase right is triggered only if and

26  when a holder of JDS common shares desires or intends to transfer

19

1 those shares." Rather, this fact would appear to support a finding

2 that JDS is able to "exercise authority or control respecting

3 management or disposition" of Hollishare assets. 29 U.S.C.

4 § 1002(21)(A).

5     The court is bound to give plaintiffs the benefit of every

6 reasonable inference to be drawn from the "well-pleaded"

7 allegations of the complaint. See Retail Clerks Intern. Ass'n,

8 Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).

9 Thus, plaintiffs need not necessarily plead a particular fact if

10 that fact is a reasonable inference from facts properly alleged.

11 See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963)

12 (inferring facts from allegations of complaint). Reading all of

13 plaintiffs' allegations in the most favorable light to plaintiff,

14 the inference is that JDS was part of this scheme to undervalue the

15 JDS stock, to limit the market of buyers, and to keep it within the

16 defendants' control. Under the pleadings, JDS is a de facto

17 fiduciary.

18 **F.    OTHER NAMED DEFENDANTS**

19     Defendants move to dismiss a number of the individually named

20 defendants.

21     **1.    <u>Michael Winn, Donna Matson, and Alan F. Herbert</u>**

22     Defendants have tendered evidence suggesting that Winn,

23 Matson, and Herbert have never been trustees or fiduciaries of

24 Hollishare and have not exercised discretionary control over

25 ////

26 ////

Hollishare's assets.  Saxon Dec., Ex. A at ¶ 6.[14]  Ellis does not oppose this motion, and thus, it will be granted with respect to her.  Dimaro and Lavick, however, ask the court to continue the defendants' motion until the close of discovery.  They direct the court to a newsletter for Hollishare which they claim "identifies Winn, Matson and Herbert as trustees of the plan."  Hubbard Dec., Ex. A.

The court has examined that document and it appears that defendants are correct in asserting that the trust referred to in that article is not Hollishare, but a separate trust which holds shares of the firm of John Dickinson Schneider.  Because plaintiffs have alleged a complex scheme between JDS and Hollishare, the court at this juncture will defer resolution of this portion of the motion to permit plaintiffs discovery as to the relationship between Hollishare and Winn, Matson and Herbert.  Plaintiffs shall file a further opposition to the motion or a concession of non-opposition not later than forty five days from the date of this order.  If plaintiffs file a further opposition, defendants are granted twenty days to respond.  That portion of defendants' motion will then stand submitted unless the court orders further oral argument.

////

////

_____

[14]  Of course, a motion to dismiss tests the pleadings. Accordingly, the court must treat the motion as one for summary judgment.

####    2.  __Loretta Stimpinski__

Defendants move to dismiss Stimpinski from these law suits. Defendants tender evidence suggesting that Stempinski is not a current Trustee of the Plan.  <u>See</u> n.14.  She admits that she was a Trustee of the Plan from 1974-1978, over twenty-seven years ago. Saxon Dec., Ex. A at ¶ 6.  Plaintiff Ellis does not oppose this motion, and thus it will be granted with respect to Ellis.

Plaintiffs Dimaro and Lavick do not dispute that Dimaro worked for Hollister from December 28, 1992 to September 30, 1999 and that Lavick worked for Hollister from November 15, 1995 to January 7, 2000.  Dimaro and Lavick, however, oppose this motion because they argue that Stempinski should still be held liable under ERISA.  I cannot agree.

ERISA imposes a statute of limitations on claims alleging a breach of fiduciary duty.  Section 413 provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

The plaintiffs filed their breach of fiduciary claim against defendants, including Stempenski, in August 2005, when they claim

22

they first had actual knowledge of any breaches from their counsel. It is undisputed, however, that Stempinski was last a trustee in 1978.  Even given the requirement that the court give all reasonable inferences to plaintiffs' pleadings, nothing suggests that once she resigned as a plan trustee, Stempinski had any responsibility for the policies, operations and administration of Hollishare.  Because plaintiffs have failed to bring their claim within six years of 1978, when she was last a trustee and administrator of the Plan, their claim is barred, unless they allege that Stempinski's alleged breach involved "fraud or concealment." Because plaintiffs fail to allege fraud, plaintiffs' claim against Stempinski is barred by § 413 of ERISA.  See Barker v. American Mobil Power Corp., 64 F.3d 1397, 1401 (9th Cir. 1995).[15]  For the reasons stated above, all claims against Stempinski are dismissed with prejudice.

### III.

#### CONCLUSION

Accordingly, the court hereby ORDERS as follows:

1.  The motion to dismiss Stempinski is GRANTED.

2.  Resolution of the motions of Winn, Matson, and Herbert is DEFERRED;

---

[15]  The Ninth Circuit found that the district court did not err where plaintiffs did not bring their action within six years of the trustees' resignation.  Plaintiffs' claims were barred, unless they could show that trustees' alleged breach involved "fraud or concealment."  Finding that the trustees did not commit fraud, the court concluded that the plaintiffs' claim did not fall within the "fraud or concealment" exception to ERISA's statute of limitations and that therefore, the claim was barred.

3.  All other motions are DENIED.

IT IS SO ORDERED.

DATED:  April 12, 2006

                                    /s/Lawrence K. Karlton
                                    LAWRENCE K. KARLTON
                                    SENIOR JUDGE
                                    UNITED STATES DISTRICT COURT

24